BAKER v. MARVEL CREEK MINING CO.

(Fourth Division. Fairbanks. September 3, 1915.)

No. 219–I.

1. CORPORATIONS ⬤➞482(9)—ATTORNEYS' FEES—COSTS.

Section 1341, Comp. Laws Alaska 1913, provides that the measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties. A stipulation for an attorney's fee in a mortgage given by a corporation is valid, when reasonable.

2. CORPORATIONS ⬤➞476(3)—MECHANICS' LIENS.

Several laborers had filed mechanics' liens on the defendant company's property for services, and others were prepared to do so. The company was financially embarrassed and could not pay. The officers of the company compromised with them by giving a note and mortgage to a trustee for the entire sum due them. On foreclosure the company sought to avoid the payment. *Held*, a mortgage executed in settlement of a suit or controversy, for a debt actually due, is supported by a sufficient consideration, and is valid.

3. CORPORATIONS ⬤➞298(5)—POWER OF DIRECTORS.

The defendant corporation was indebted to its mining employés in considerable sums for past-due wages. Some of them had filed liens, and others were preparing to do so. A meeting of its board of directors was called, at which only three of the five directors of the company attended. The other two were not notified, on account of their absence and the distance and necessity for prompt action. The three who did attend (one of them being the president and another the secretary) authorized the execution of a note and a mortgage, to be executed by the president and secretary, to secure the amount due to the men, to run to a trustee named by the employés, which was done. On foreclosure, the company sought to avoid the mortgage as ultra vires. *Held*, the action of the board of directors in making the note and mortgage in the absence of the other two directors was without fraud and valid.

This is a suit to foreclose a mortgage dated August 8, 1914. It purports to secure an indebtedness of $3,061.20, bearing interest at 10 per cent. per annum from date until paid, according to the terms and conditions of a certain promissory note executed by the defendant corporation to the plaintiff herein as trustee for the respective parties named in the complaint.

⬤➞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The case came on for trial at the special June, 1915, term of court at Iditarod on the 15th day of July, 1915. By permission of the court, briefs supplementing the arguments presented by counsel, have been filed.

J. C. Moody, for plaintiff.

Geo. W. Albrecht, of Iditarod, for defendant.

BUNNELL, District Judge. The defendant herein contends that the plaintiff is not entitled to a decree of foreclosure as prayed for in the complaint for the following reasons:

1. The note referred to in the mortgage and introduced in evidence as Plaintiff's Exhibit A is as follows:

"Iditarod, Alaska, August 8, 1914.

"Sixty days after date, for value received, the undersigned promises to pay to Claude Baker, trustee, or order, the sum of three thousand and sixty-one and 20/100 dollars at his place of business in Iditarod, together with interest at the rate of ten per cent. per annum from date.                     Marvel Creek Mining & Dev. Co.,

"By W. W. Acheson, President,

"J. G. Rivers, Secretary."

The mortgage introduced in evidence as Plaintiff's Exhibit B provides for "an attorney's fee in the sum of three hundred ($300.00) dollars, in case foreclosure suit is brought."

The rule is clearly stated in 27 Cyc. p. 1103, § 9:

"9. *Stipulation as to Attorney's Fee.* In most jurisdictions it is held that a mortgage may lawfully contain a stipulation on the part of the mortgagor to pay a reasonable sum to cover the fee of the mortgagee's attorney in case of foreclosure, and that such sum shall be a lien on the land, or shall be included in the judgment or decree of foreclosure; but in a few such a stipulation is held to be contrary to public policy, and therefore to be void and incapable of enforcement. In respect to the validity or invalidity of a stipulation of this kind, the courts of the United States will decide in accordance with the laws of the state wherein they sit."

Section 1341 of the Compiled Laws of Alaska provides that the measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties. It therefore appears that the stipulation in the mortgage relative to an attorney's fee was within the power of the parties to the mortgage, and since the amount named is considered reasonable it is allowed.

2. At the time of the execution and delivery of the note and the mortgage to the plaintiff as trustee for the fourteen laborers named in the mortgage, eight of said laborers had filed a lien upon the premises described in the mortgage, and the time for filing a lien by the other six laborers upon said premises had not expired.

The mortgage, after reciting the indebtedness to the fourteen laborers, amounting to the sum of $3,061.20, continues:

"And it being the desire of the said party of the first part (the Marvel Creek Mining & Development Company) that no lien against the said premises be placed of record, and it also being the desire of both parties hereto that the said claims above referred to be secured by first mortgage upon all of the property belonging to the said party of the first part, and the board of directors of the said party of the first part having duly met and all members being present and a resolution having been duly adopted and spread upon the minutes, authorizing the president and secretary of the said party of the first part, to execute and deliver an instrument to secure the payment of the amount above specified, and all of said claims having for convenience been assigned to Claude Baker as trustee for the above-named parties:

"Now therefore, the said party of the first part, in consideration of the sum of $3,061.20 due the said parties above mentioned, has this day granted, bargained, sold, conveyed, and quitclaimed, and by these presents does grant, bargain, sell, convey, and quitclaim, unto the said party of the second part, Claude Baker, trustee, or his successor, the following described real and personal property lying and being in the Kuskoquim mining and recording district, territory of Alaska, to wit."

There is nothing to show that the laborers who had filed a lien sought to enforce it. On the other hand, the evidence shows that the sum of $3,061.20 is a balance found to be due upon a settlement of the several claims, and that the mortgage was given to secure said sum, and to provide an extension of time for the payment of the debt already due.

"A settlement of claims and accounts, made by parties competent to contract, no fraud being shown, is sufficient consideration for a mortgage executed by the one to the other for the balance found due to him, or for an amount covering such balance and also an additional sum for forbearance. And a mortgage executed in settlement of a suit or controversy in litigation between the parties is supported by a sufficient consideration." 27 Cyc. p. 1052, § 3.

"An extension of time for the payment of a debt already due, or presently maturing, or of the accrued interest thereon, and the creditor's forbearance to sue or resort to other legal remedies for its

collection, constitute a good and sufficient consideration for a mortgage given by the debtor to secure the debt." 27 Cyc. p. 1052, § 4.

3. Article 8 of the by-laws of the defendant corporation provided as follows:

"No contract by any officer of the company shall be valid without the previous authorization or subsequent ratification of the board of directors."

It is further provided in article 9 that:

"A regular monthly meeting of the board of directors shall be held at the office of the company in Iditarod, Alaska, on the first Monday of each month at 1 o'clock p. m."

It appears that on the 8th day of August, 1914, the directors of the Marvel Creek Mining & Development Company were W. W. Acheson, Fred Labelle, David Strandberg, John E. Holmgren, and Guy Rivers; that on the 7th day of August, 1914, a meeting of the board of directors was held, at which meeting there were present Directors Acheson, Rivers, and Strandberg; that said meeting adjourned to meet at Iditarod the following day; that no notice of said special meeting or adjourned meeting was given to Labelle and Holmgren; that at said adjourned meeting there were present Directors Acheson, Rivers, and Strandberg; that the company was in financial difficulties, and immediate action by the board of directors was necessary. Thereupon the three directors, being a majority of the board of directors, by unanimous vote authorized the president and secretary of the company to do and perform such acts as in their opinion would best protect the creditors and stockholders of the corporation. After ratifying the sale of certain personal property and receiving payment of $1,000, it was ordered that this same $1,000 be paid to the plaintiff herein, to apply on the claims of the laborers assigned to plaintiff as trustee. It was further ordered that the note and mortgage admitted in evidence as Plaintiff's Exhibits A and B be executed and delivered. There is no evidence tending to show fraud or collusion. The defendant corporation now, under other officers, seeks to have this court declare the execution and delivery of the mortgage on the 8th of August, 1914, void.

Thompson on Corporations, vol. 2, p. 74, § 1142, states the exceptions to the general rule:

"The rule that all directors are entitled to notice of special meetings, and that acts done or business transacted without such notice is invalid, like most other general rules, is subject to some exceptions. One exception is that where it is either impossible or impracticable to give the required notice, or any reasonable notice, then it may be excused, and the business transacted will be valid, notwithstanding that notice was not given and that all the directors were not present; the rule requiring notice of special meetings proceeding upon the assumption that it is practicable and possible to give such notice. So emergencies may arise which will excuse the giving of notice to all of the directors of a special meeting. Both of these propositions are well illustrated in a case where an assignment was made by three of five directors, the other two not being present and not receiving any notice of the meeting."

The evidence shows that Acheson, the president of the company, recently returning from the property of the company on the Aniak, in the Kuskoquim precinct, reports that it is impossible to continue operations and that General Manager Labelle is instructed to stop all work pending developments. Labelle is also one of the directors of the company, and Holmgren is absent. In the opinion of the court it was not only impracticable to give notice to Labelle and Holmgren, but an emergency existed, and there was more than a reasonable necessity for the action taken. From the evidence there is every reason to believe that Directors Acheson, Rivers, and Strandberg acted in good faith in an honest endeavor to protect the creditors and stockholders of the company.

The rights of laborers, part of whom had filed a lien and the remainder of whom did not do so because their claims were secured by a mortgage, will always be protected, if it is within the power of the court so to do.

The act of the directors was intended to operate as a benefit to the corporation. It extended the time within which the claimants could be paid, and the acceptance of the note and mortgage by the trustee precluded the laborers from maintaining any action they otherwise would have had under the lien law.

Cook on Corporations, vol. 3, § 725, recites the rule properly applicable to this case:

"Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. A mortgagee is not bound to inquire into the observance of the rules and regulations of the company relative to the call of meetings. Where the seal of the company has been affixed to a

mortgage by the secretary, the mortgagee need not inquire whether a quorum of the directors was present at the meeting and authorized the mortgage, nor whether the secretary was duly authorized to affix the seal, the court upholding the mortgage, although a quorum was not present when it was authorized. Again, where a person sells land to a company, relying on a resolution, certified to by the officers, to the effect that the purchase had been duly authorized, the company cannot afterwards repudiate the purchase, on the ground that the directors' meeting was irregular and no quorum present.' The Supreme Court of the United States lays down the rule as follows: 'One who takes from a railroad or business corporation in good faith, and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or of both, have authorized the execution and issue of the obligation.' "

It does not appear that the officers of the corporation usurped their authority as such officers. The evidence shows that their acts come under the head of good business judgment for the benefit of the corporation, and the court will not invalidate the contract.